IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**ERICA TAYLOR on behalf of**
**CARLNACI D. PETE,**

    **Plaintiff,**

vs.                                                         **CASE NO. 4:07cv18-MP/WCS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed as to Listing 112.05C, but be reversed as to Listing 112.05D, and remanded for further consideration.

**Procedural status of the case**

Carlnaci D. Pete, a minor, through his mother, Erica Taylor, applied for supplemental security income benefits. Plaintiff was born on October 5, 1994, and was 9 years old at the time of the denial of his application. The Administrative Law Judge

found that Plaintiff was not disabled as defined by Social Security law as applicable to children. Plaintiff contends that he should have been found to have a disability that meets or equals either Listing 112.05C or Listing 112.05D. Plaintiff also argues that the ALJ made an unsupported credibility finding.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).

"A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)

(citations omitted).  However, "[i]f the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A child's claim for supplemental security income benefits is analyzed by following the rules set forth in 20 C.F.R. § 416.924, et seq.  The Commissioner "will consider the combined effects of all [the child's] impairments upon [the child's] overall health and functioning," and is to evaluate "any limitations in [the child's] functioning that result from . . . symptoms, including pain."  20 C.F.R. § 416.924(a).  The claim is to be evaluated in three steps:

> 1. Is the child currently engaged in substantial gainful activity?
>
> 2. Does the child have any severe impairments?
>
> 3. Does the child have any severe impairments that meet, are medically equal to, or functionally equal in severity to, an impairment listed in Appendix 1 of 20 C.F.R. Part 404?

20 C.F.R. §§ 416.924(a)-(d).

The claim is denied at step two if the child does not have a severe impairment.  A "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations" is not a "severe impairment."  20 C.F.R. § 416.924(c).

At step three, the issue is whether the impairment meets or equals a listed impairment. This is the same as for evaluation of an adult claim.

If the impairment neither meets nor equals a listed impairment, the Commissioner must next determine whether the impairment is functionally equal in severity to a listed impairment. This step is unique to child supplemental security income disability claims. There is no "residual functional capacity" determination, and no determination of ability to perform work.

As to functional equivalency, the regulations provide:

> If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings. By "functionally equal the listings," we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain, as explained in this section.

20 C.F.R. § 416.926a(a). The domains are:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and,
6. Health and physical well-being.

20 C.F.R. § 926a(b)(1)(i) – (vi).

"[A] 'marked' limitation in a domain [will be found] when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete

activities." 20 C.F.R. § 416.926a(e)(2)(i). It "means a limitation that is 'more than moderate' but 'less than extreme.' " *Id*.

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

"[A]n 'extreme' limitation in a domain [will be found] when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

> If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(3)(iii).

The Commissioner's regulations provide that test scores are not to be relied upon without considering other evidence, and "[n]o single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(i). Test scores are considered "together with the other information we have about your functioning, including reports of classroom performance and the observations of school personnel and others." 20 C.F.R. § 416.926a(e)(4)(ii).

To decide whether the claimant has a "marked" or an "extreme" limitation, the Commissioner:

> will consider your functional limitations resulting from all of your impairments, including their interactive and cumulative effects.  We will consider all the relevant information in your case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the descriptions we have about your functioning from your parents, teachers, and other people who know you, and the relevant factors explained in §§416.924a, 416.924b, and 416.929.

20 C.F.R. § 926a(e)(1)(i).

> The medical evidence may include formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents.  Standard scores (e.g., percentiles) can be converted to standard deviations.  When you have such scores, we will consider them together with the information we have about your functioning to determine whether you have a "marked" or "extreme" limitation in a domain.

20 C.F.R. § 926a(e)(1)(ii).

**Analysis**

### Testimony from the administrative hearing

Plaintiff was eight years old at the time of the administrative hearing, and was to be nine in a few months.  R. 237.  He had once repeated first grade, and was to enter second grade that fall.  *Id*.  He was assigned to special education classes.  *Id*.

Plaintiff's mother said that Plaintiff had difficulties in math, reading, and somewhat in writing.  R. 238.  His mother said he was "pretty good" at reading, and was able to count to 20.  *Id*.  She said that he was able to dress himself, but still wet his bed about twice a month.  *Id*.  He was not able to prepare his own food.  R. 242.

Plaintiff's mother said her son had trouble remembering and following simple instructions at home.  R. 239.  She also said he had a "real quick" temper, and had trouble controlling anger.  *Id*.  Plaintiff had threatened other students at school.  R. 241.  The school had not, however, recommended counseling for Plaintiff.  R. 242.  She took

Plaintiff to her doctor to try to get medication for his temper, and the doctor told her that he would not prescribe such medication, that Plaintiff had to be "hyper in order to get that kind of help." R. 243. Plaintiff was not taking any medication. *Id*.

She also testified that Plaintiff had chronic bronchitis and had trouble breathing at night. R. 241. He did not have breathing difficulties during the day. *Id*. She said that Plaintiff did not have asthma. R. 243.

Plaintiff (the child) testified that he would be entering the second grade in school. R. 244. He said he was in special classes because he was slow in math. *Id*. Plaintiff said he could read a book by himself. R. 245. He said he could read SpongeBob and Dr. Seuss books. *Id*.

Plaintiff said he got along with other kids in school "bad." R. 244. He said "they always mess with me" and hit him. R. 245. He said he hit them back. *Id*. He did not get along with his two year old brother, his aunt, or his neighbor. R. 246. He did not get along with his aunt because she "be whipping people," and he did not get along with his neighbor because she would not pay him for doing things. *Id*. He did not like his teacher because she told him no. *Id*.

Plaintiff said he could dress himself in the morning, but could not make himself food. R. 247. He said his mother did not ask him to help with chores around the house. *Id*. He said that if she asked him to help, he would not. *Id*. He said his brother made the messes, and when asked whether he wanted to clean up after him, said "I just throw it on the floor." *Id*.

Plaintiff said he had been at camp that summer and enjoyed camp. R. 248. He learned to swim and played football and basketball. *Id*.

Case No. 4:07cv18-MP/WCS

**Whether the ALJ erred in finding that Plaintiff's impairments did not meet Listings 112.05C and 112.05D**

Listings 112.05C and D, in the Listing entitled "Mental Retardation." It provides in relevant part that the impairment must be:

> Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
>    *   *   *
>
>  C. A valid verbal, performance, or full scale IQ of 59 or less;
>
>  or
>
>  D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;
>
>    *   *   *

However, whether a claimant meets this Listing is not entirely determined by the IQ score:

> [A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (rejecting a claim of section 12.05(C) mental retardation where the claimant's I.Q. score of 69 was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher).

Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).


   **Listing 112.05C**

In January, 2003, Plaintiff's performance IQ was measured at 57, but he had a verbal IQ of 97 and a full scale IQ of 75. R. 69. This testing was performed by Dorothy R. Colbert, M.A., the school psychologist. R. 68-70. Plaintiff had been referred for testing because in the classroom he appeared to be inattentive, easily distracted, had difficulty expressing ideas, performed inconsistently from day to day, had difficulty completing assignments, had a short attention span, and was off-task. R. 68. Several "interventions" had been unsuccessful. *Id.*

Plaintiff was observed during testing to be cooperative, and the test results were "considered to provide a reasonably reliable measure of his current level of functioning in each of the areas assessed." R. 68. Ms. Colbert noted:

> The 40-point difference in favor of his Verbal IQ is clinically significant and may suggest that his verbal expression, linguistic skills are better developed than his nonverbal perceptual organizational skills. The 40-point split is found in less than 1% of the students administered the scales. The Performance IQ is considered to represent the best estimate of his current intellectual functioning.

R. 69. Ms. Colbert concluded:

> Current evaluation results indicate [Plaintiff's] overall functioning is within the Borderline range of measured intelligence and at the 5th percentile when compared to other students his age. A relative significant strength was demonstrated on tasks assessing knowledge of relationship skills and a paper a[n]d pencil copying task assessing speed and accuracy in symbol transcription. Math represents an area of significant weakness for him. Processing speed represents an area of significant weakness for him.

R. 70. The Administrative Law Judge found the Performance IQ score of 57 to be:

> . . . inconsistent with the evidence of record when considered in its entirety. In July 2001, results of the WISC-III showed a Performance IQ of 62; however, the examiner considered this a slight under estimate. It was not clear whether the claimant put forth his best effort and he was distracted by the sounds of his brother playing in the waiting room.

> Furthermore, school records only show a slight delay in the claimant's academic performance. His year-end grade average for the school year 2000-2001 was "S" in science E, Art E, Music E, Physical Education E, Language Arts E, Math E, and Social Studies E. In 2001-2002, school records show the claimant was working below grade level in reading, writing, and math; however, his teacher stated he stayed on task for the most part and needed extra supervision to be able to finish his work correctly. Therefore, the undersigned finds the claimant's severe impairment does not meet or medically equal the criteria of any listing.

R. 20-21.

Plaintiff argues that the Performance IQ test scores from 2001 and 2003 are not inconsistent, but reflect changes in Plaintiff's abilities in the intervening two years. Doc. 12, p. 10. Plaintiff also argues that Dr. Hume, who did the July, 2001, testing, did not have Plaintiff's school records and had thought those records would have been useful. *Id*. Dr. Hume had said it would have been useful to have the school records to see how Plaintiff's teacher viewed him. R. 200.

Plaintiff also argues that the finding that Plaintiff had had only a "slight delay" in academic performance is not supported by substantial evidence in the record. Doc. 12, p. 11. Plaintiff notes that he had to repeat the first grade, received special education instruction when repeating the first grade, and had to undergo testing due to continued difficulties. *Id*. It was at this time that he scored 57 on his Performance IQ. *Id*., p. 11. Plaintiff points out that at the time this score occurred, Plaintiff was about a year behind his peers. *Id*. From this Plaintiff argues that the delay was not "slight." *Id*., p. 12.

Plaintiff also argues that the school year 2000-2001 was the kindergarten year, and thus the ALJ was relying upon kindergarten grades and performance, not first grade. *Id*., p. 12. He notes that his kindergarten teacher said he was not ready for

kindergarten. *Id.* Plaintiff points out that he did not progress adequately in first grade because he had to repeat first grade. *Id.*

Had Dr. Hume reviewed the school records, she would have looked at the records for the kindergarten year, 2000-2001. R. 96.[1] Almost all of the grades from the kindergarten year show satisfactory progress, and Plaintiff was sent on to the first grade. *Id.* Thus, the lack of school records probably would not have affected Dr. Hume's conclusion that the IQ Performance Score might reflect under performance.

Nor was it error for the Administrative Law Judge to have noted these kindergarten grades as a basis for determining to discount the Performance IQ score of 57. It is true that Plaintiff's kindergarten teacher said that Plaintiff was not ready for kindergarten, R. 141, but despite this contrary evidence, the grading for all four attendance periods for that year are satisfactory. R. 96.

The finding that Plaintiff's school progress had only been "slightly" delayed depends upon additional evidence. Plaintiff's progress for first grade in the school year 2001-2002 are mixed. In September, 2001, he was found to be on or above grade level in reading, but below grade level in writing and math. R. 89. In October, 2001, it was found that he stayed on task for the most part, but needed a lot of extra supervision to correctly do the work. R. 81-82. By the fourth nine week period of that school year, however, it was reported that he had made good progress in reading, writing, listening, viewing, and speaking, and satisfactory progress in mathematics and social studies,

---

[1] Although the school year is not on this school record, it will be assumed, as Plaintiff did, that this is the 2000-2001 kindergarten year at Havana Elementary School in Gadsden County, Florida.

Case No. 4:07cv18-MP/WCS

and he had otherwise made satisfactory grades in all other areas.  R. 98.  Still, he was found to not be at grade level in reading, mathematics, and writing, and he was retained that year.  *Id.*  While these records show that Plaintiff was delayed a year, the records also support a conclusion that Plaintiff was making progress.  Thus, there is substantial evidence in the record for the ALJ to conclude that the academic delay was only "slight" at that point.

>During the testing on July 21, 2001, Dr. Hume found that Plaintiff was
>
>. . . somewhat distracted by the sounds of his brother playing in the waiting room.  He was willing to attempt all items and persisted for the most part but did not seem overly interested.  He sighed and put his head in his hands in reaction to failure.  He had no particular reaction to success.  During testing, [Plaintiff] had no apparent sensory, motor, or health problems.  It is not clear that this is his best effort.  The results may slightly underestimate his ability, particularly on performance tasks.

R. 198.  Dr. Hume found Plaintiff to be friendly and pleasant, though he did not smile and his mood was on the lethargic side.  R. 198.  He had no apparent sensory, motor, or health problems, though his breathing was heavy due to bronchitis.  *Id.*  Plaintiff was not at all hyperactive.  R. 200.

>Consistent with the later testing by Ms. Colbert, Dr. Hume found that Plaintiff had a much higher Verbal IQ (90) than his Performance IQ (62).  R. 198.  Dr. Hume found, however, that "most of Plaintiff's scores were below first grade level suggesting he may have some difficulty keeping up with his peers if he is in regular classes."  R. 200.  Dr. Hume concluded that Plaintiff's "overall cognitive ability, as evaluated by the WISC-III, cannot be easily summarized because his verbal reasoning abilities are much better developed than his nonverbal reasoning abilities."  *Id.*  Dr. Hume noted that she had no school records to review, and thought that would have been helpful.  *Id.*  She concluded

that the results "should be interpreted with caution" and Plaintiff's prognosis was "fair." *Id.*

Dr. Hume's findings, when considered with all of the other evidence, is substantial evidence in the record for the ALJ to determine that Plaintiff's second Performance IQ score was not determinative of whether his impairment met Listing 112.05C. Neither expert determined Plaintiff to be mentally retarded, and probably for good reason, as Plaintiff's verbal skills were so far above the usual scores for someone mentally retarded. On the whole, therefore, the ALJ's findings as to Listing 112.05C are supported by substantial evidence in the record. This aspect of the Commissioner's decision should be affirmed.

### Listing 112.05D

To justify a finding that Plaintiff met Listing 112.05D, Plaintiff had to show a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." There seems to be no argument against the proposition that Plaintiff's Performance IQ scores are valid in the range from 60 to 70, so the only issue is whether Plaintiff has shown a physical or other mental impairment imposing an additional and significant limitation of function.

Plaintiff argues that Listing 112.05D was met because he had "the additional diagnosis of Adjustment Disorder with Mixed Disturbance of Emotions and Conduct, Provisional and/or a Learning Disorder NOS." Doc. 12, p. 13; R. 200. He also contends that the ALJ should have considered Plaintiff's bronchitis in conjunction with Listing

112.05D.  *Id.*, p. 15. n.1.  Plaintiff cites Edwards by Edwards v. Heckler, 755 F.2d 1513

(11th Cir. 1985).  That case held that:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal.  The question under Listing 12.05(C), however, is not whether the impairment is in and of itself disabling, *see Wright v. Schweiker*, 556 F.Supp. 468, 476 (M.D. Tenn.1983); thus, "significant" requires something *less* than "severe" within the meaning of § 404.1520(c).

755 F.2d at 1515 (emphasis added).  This, therefore, places a very light burden of proof upon Plaintiff to show something "significant" since the standard is even less demanding that the step 2 standard.[2]

The Commissioner mentioned this aspect of Plaintiff's claim in his memorandum, but did not address it.  Doc. 13, pp. 5-7.  Listing 112.05D is different from Listing 112.05C.  The Administrative Law Judge did not mention this Listing 112.05D in his opinion.  Instead, he only addressed Listing 112.05C because apparently that was the only Listing argued by Plaintiff's attorney.  R. 20.  Plaintiff's attorney, however, did present a claim that Plaintiff's condition met Listing 112.05D to the Appeals Council.  R. 232.

---

[2] "[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' "  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), *citing* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).

The Commissioner should decide, in the first instance, whether Listing 112.05D has been met.  Since a remand is needed for this purpose, the court need not address Plaintiff's final argument, that the Commissioner erred in making credibility findings.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED** with respect to the finding that Plaintiff's impairment did not meet Listing 112.05C, but be **REVERSED** as to Listing 112.05D and the application be **REMANDED** to consider whether Plaintiff's impairments equal Listing 112.05D.

**IN CHAMBERS** at Tallahassee, Florida, on August 24, 2007.


s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**